UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————

UNITED STATES OF AMERICA,

       - against -                Case No. 10 CR 459 (SJ)

ARKADI SHAPIRO,

           Defendant.

———————————————————

Sentencing Memorandum on Behalf of Arkadi Shapiro

                      Andrew J. Frisch
                      The Law Offices of Andrew J. Frisch
                      40 Fulton Street, 23rd Floor
                      New York, New York 10038
                      (212) 285-8000
                      afrisch@andrewfrisch.com

                      *Attorney for Arkadi Shapiro*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

       - against -                          Case No. 10 CR 459 (SJ)

ARKADI SHAPIRO,

          Defendant.

---

### Sentencing Memorandum on Behalf of Arkadi Shapiro

This Memorandum is submitted on behalf of Arkadi Shapiro in aid of sentencing, scheduled for March 8, 2012. The government and Mr. Shapiro agree that the range under the United States Sentencing Guidelines set forth in the plea agreement, 41 to 51 months, is the applicable Guideline range. The government and Mr. Shapiro also agree that Mr. Shapiro's Criminal History Category is I. For the reasons demonstrated herein, the Court should sentence Mr. Shapiro to a term of incarceration of no more than 41 months.

Mr. Shapiro, a sixty-two year-old United States citizen, pled guilty before the Honorable Robert M. Levy on June 7, 2011, to health care fraud, in violation of 18 U.S.C. § 1349, and tax evasion, in violation of 21 U.S.C. § 7201. Between 2005 and 2010, Mr. Shapiro, with his business partner and co-defendant Gennadiy Bronshteyn, was a retailer of durable medial equipment. Mr. Shapiro committed his crime by working with others to create and submit invoices for durable medical equipment that exaggerated the cost of the equipment. Mr. Shapiro used the invoices to report an inflated cost of doing business to the Internal Revenue Service.

2

The range of 41 to 51 months is the result of the  following Guideline analysis:

Health Care Fraud

| | |
|---|---|
| Base Offense Level (§ 2B1.1(a)(2)) | 6 |
| Plus: Loss of more than $1 million (§ 2B1.1(b)(1)(I)) | + 16 |
| Plus: Sophisticated means (§ 2B1.1(b)(9)(C)) | + 2 |
| Plus: More than ten victims (§ 2B1.1(B)(2)(A)(I)) | + 2 |
| | 26 |

Tax Evasion

| | |
|---|---|
| Base Offense Level (§ 2T1.1(a)(1) and 2T4.1(H)) | 20 |
| Plus: Special Offense Characteristics (§ 2T1.1(b)(1)) | + 2 |
| | 22 |

Total Adjusted Offense Level                                    26

| | |
|---|---|
| Acceptance of Responsibility | - 3 |
| Global Disposition | - 1 |
| Total Offense Level | 22 |

Criminal History Category

As noted, the government and Mr. Shapiro also agree that the plea agreement is correct that the applicable Criminal History Category is I.  The Presentence Report incorrectly finds that Mr. Shapiro's Category is II based on its view that he qualifies for two criminal history category points under U.S.S.G. § 4A1.1(d) because he committed his offense while serving a sentence of conditional discharge imposed in Kings County misdemeanor court in 2006.  But as the commentary to Section 4A1.1(d) explains, a defendant qualifies for that enhancement only if

his sentence is "countable" in that it was a "custodial or supervisory component." Mr. Shapiro's sentence was not such a sentence, but a discharge upon performing community service. See N.Y. Penal Law § 65.10(2)(h). Thus, Mr. Shapiro's Criminal History Category is I.

The Appropriate Sentence

The law requires the Court to impose a reasonable sentence that is "sufficient, but not greater than necessary" to comply with the purposes of the sentencing factors outlined in Title 18, United States Code, Section 3553. In *Gall v. United States*, 128 S.Ct. 586, 597 (2007), the United States Supreme Court held that while the Guidelines should be "the starting point and the initial benchmark" of a reasonable sentence, the sentencing judge "may not presume that the Guideline range is reasonable" and "must make an individualized assessment based on the facts presented." The Court also "reject[ed] an appellate rule that requires 'extraordinary' circumstances to justify a sentence outside the Guidelines range." Thus, a sentencing Court, after considering the advisory Guidelines, is now free to fashion a reasonable sentence that it deems appropriate based upon all of the sentencing factors set forth in 18 U.S.C. §3553(a).

The total offense level underlying the above-described Guidelines calculation is below the computation found in Presentence Report. The difference lies principally in divergent analyses of loss. It appears that the Probation Department based its calculation on total billings, but this view was fully vetted during the parties' negotiations that led to the stipulated Guideline range. The parties' negotiated resolution reflects legitimate claims for durable medical equipment actually provided by Mr. Shapiro. It also serves to save substantial government resources that would have been necessary to undertake an impractical analysis of tens of

4

thousands of documents.[1]

       The parties also agree that, contrary to the Presentence Report, paragraph 63, no aggravating role adjustment is appropriate, based on two part-time employees.  Those employees were not part of the fraud.

       Mr. Shapiro has fully accepted responsibility for his conduct.  He is supremely remorseful for his conduct and for the harm he has caused the victims of his crime and his family.  Just this week, Mr. Shapiro's elderly father died in Israel.  Because of the circumstances of this case, Mr. Shapiro had not visited his father since before his arrest in 2010.   The loss has served to add even more to Mr. Shapiro's reflection about what he has done and amplify his deep regret.

       Mr. Shapiro is under the care of two professionals.  Mr. Shapiro has been under the care of Dr. Susan Levit since 2006 for maladies including hypertension, hearing loss, herniated disks and prostate problems.  Exhibit 1.  Mr. Shapiro has been the care of both Dr. Levit and Dr. Marina J. Feygin for severe alcohol dependence.   Exhibit 2.  Mr. Shaprio has been consuming five to seven shots of liquor on a daily basis and has come to acknowledge that his dependence on alcohol is a problem that must be overcome.  Mr. Shapiro has been taking medications to address his alcohol dependence and his depression.

       Mr. Shapiro and his wife Natalia were married in the Ukraine in 1979 and have an adult son who works as a senior equity research analyst in New York.  Natalia works as a

---

[1] Paragraph 16 of the Presentence Report is incorrect to the extent it suggests that all invoices submitted were fraudulent and identifies Bath Medical Supplies, Inc., which did not deal with the corrupt wholesaler and did not submit fraudulent invoices.  It also incorrectly lists Fema Medical Supply, Inc., which was not a company in which Mr. Shapiro was involved.

computer programmer. She has been treated for throat cancer and has undergone two oncological operations. She has recently also been diagnosed with systemic lupus erythematosus, an autoimmune connective tissue disease, for which she is currently being treated.

Mr. Shapiro and his family immigrated to the United States in 1993 and settled in Brooklyn to try and make a better life for themselves. While Mr. Shapiro's son had become isolated in the Urkraine as the result of bullying and ridicule for being Jewish, Mr. Shapiro devoted himself to integrating the boy into his new life in Brooklyn, encouraging an interest in sports and ingraining in him the American ideals of hard work and achievement. Exhibit 3. The social and professional evolution of Mr. Shapiro's son from a frightened boy to a senior equity research analyst were accomplished as the result of Mr. Shapiro's guidance, and speak to the sincerity of Mr. Shapiro's own capacity for introspection and redemption.

Mr. Shapiro's capacity for love and empathy helped Natalia through her two oncology surgeries and currently helps her through her lupus, which sometimes causes her such terrible pain that Mr. Shapiro carries her upstairs to bed. Exhibit 4. Mr. Shapiro's inability to help Natalia while incarcerated will be on his mind everyday they are apart. While Mr. Shapiro's devotion to family and friends do not relieve him a prison sentence, they help demonstrate that a sentence no greater than 41 months is all that is necessary.

In a letter to the Court urging a sentence that returns Mr. Shapiro to his family and friends as soon as possible, Mr. Shapiro's mother-in-law recounts Mr. Shapiro's call to action after Natalia's father was trapped in a mine and endured extensive medical treatment upon his rescue. Exhibit 5. Rabbi Avroham Hertz speaks of Mr. Shapiro's humility and befriending of the congregation's elderly. Exhibit 6. Mr. Shapiro's daughter-in-law writes the Court that Mr.

Shapiro is caring and supportive in away that her father is not, and how she turns to Mr. Shapiro in times of need. Exhibit 7. A longtime friend, Dina Perepelyuk writes the Court about Mr. Shapiro's loyalty, his active involvement in the temple and his great generosity. Exhibit 8. Pavlo Ageyev, Olga Aleksandrovskaya, Gregory and Nelya Vidgop, and Ellen and Nathan Zhuravsky all write the Court about Mr. Shapiro's unfailing generosity, selflessness and humility. Exhibits 9-13.

> The Court has considerable discretion in making its "'individualized assessment' of the sentence warranted under [18 U.S.C.] § 3553(a) 'based on the facts presented.'" *United States v. Jones*, 531 F.3d 163, 170 (2d. Cir. 2008) (quoting *Gall v. United States*, 128 S. Ct. 586, 597 (2007)). The deference granted a district court's determination springs from its "singular advantage of actual and extensive sentencing experience," as well as its familiarity with the individual case and the individual defendant before it. *Id.* at 181 (citations omitted). As such, as the Second Circuit explained in *Jones*, "it is the district court's particular trust to ensure the 'uniform and constant' principle of the federal sentencing tradition, specifically, that 'every convicted person [be considered] as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.'" *Id.* at 182 (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996)). There is "[n]o limitation . . . on the information concerning the background, character, and conduct of a person convicted of an offense which a court . . . may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661; *see also United States v. Fernandez*, 443 F.3d 19, 33 (2d Cir. 2006) ("Section 3553(a)(1) . . . contains no express limitations as to what "history and characteristics of the defendant" are relevant").

Mr. Shapiro is painfully aware of the gravity of his criminal conduct, and that he has wonderful family and friends who will suffer with him during the period of years he will be incarcerated.   But Mr. Shapiro has demonstrated through his devotion to the people in the world closest to him that he has a great capacity for redemption, which counsels in favor of a sentence no greater than 41 months.

Finally, courts in this Circuit have declined to impose sentences of the sane magnitude on older defendants (Mr. Shapiro is 62) because "[r]ecidivism rates decline relatively consistently as age increases."  U.S. Sentencing Comm'n, Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines at 12 (2004).  Further, in light of the substantial forfeiture to which Mr. Shapiro has consented, restitution which will be ordered and his limited ability pay, no fine should not be imposed.

Respectfully submitted,

__/s/_____
Andrew J. Frisch
The Law Offices of Andrew J. Frisch
950 Third Avenue, 15th Floor
New York, New York 10022
(212) 784-2413
afrisch@andrewfrisch.com

*Attorney for Arkadi Shapiro*

Dated: March 1, 2012

8